No. D017027. Fourth Dist., Div. One. Sept. 28, 1994.]

In re the Marriage of LOIS J. and ROBERT J. CHRISTIE.
LOIS J. CHRISTIE, Appellant, v.
ROBERT J. CHRISTIE, Respondent.

850

## COUNSEL

Roy B. Garrett for Appellant.

Ring & Cline and Richard D. Ring for Respondent.

## OPINION

**TODD, Acting P. J.**—Lois J. Christie appeals a portion of a September 1992 order of the family court terminating the court's jurisdiction over the matter of spousal support as of June 1, 1994, subject to its jurisdiction to alter, terminate or modify support in the interim, and immediately terminating its jurisdiction to extend spousal support or spousal support jurisdiction beyond June 1, 1994.

Finding no abuse of the court's wide discretion in terminating spousal support as of June 1, 1994, under the circumstances, we affirm that portion of the order. However, we determine the trial court erred in immediately terminating its jurisdiction to extend the spousal support order beyond the date fixed for termination of spousal support. Thus, we reverse that portion of the order and remand the matter to permit Lois to show good cause why the trial court's jurisdiction should be extended beyond that date.

### FACTS

The 13-year marriage of Lois and Robert began June 5, 1974. Lois and Robert separated June 29, 1987, when Lois was 49 and Robert was 52. The marriage terminated in November 1988. There were no children. In accordance with a marital settlement agreement incorporated into the judgment, the court provided for termination of spousal support upon the death of either party, Lois's remarriage or "further order of the Court." As of June 1, 1988, Robert began paying Lois spousal support of $2,500 per month and continued to pay that amount until November 1990. In October 1990 Robert's employment, which had been paying him a salary of $125,000, terminated. He stopped paying spousal support and in December 1990 filed an order to show cause re modification because he had no income.

One year after Robert's termination he received some $76,000 from a tax-deferred account ($18,500) and a wrongful termination settlement ($57,500).

Robert did not tell anyone about his receipt of funds from the settlement. In the meantime he had obtained other employment in January 1991 at a salary of $64,000 per year.

During all of 1991 Robert paid just over $3,500 to Lois for his support obligation. At the time of the April 1992 trial on Robert's order to show cause, he was in arrears by a total of $42,680 on his $2,500 per month obligation.

In the meantime, between November 1990 and April 1992, Lois had borrowed $96,000 from a friend in order to pay debts, school expenses and living expenses, including funds used in the purchase of a mobilehome.

Lois was pursuing a teaching credential after having left the marriage with a 10th grade education. She attended Palomar College, receiving her A.A. degree, then went on to California State University at San Marcos, from which she was to receive her B.A. in December 1992. She wanted to obtain a teaching credential because "I can teach until my seventies" and "they have a wonderful retirement plan" and "and if I get ill or something happens, I can always teach part time; I can substitute teach. This would also help me because I'm only going to come out with very little retirement, also very little social security. I thought I could supplement that with substituting." Lois made the dean's list every semester and was in her third semester at the university at the time of trial, carrying 18 units, significantly more than the average full-time student.

After her December 1992 graduation, it would take Lois two semesters plus a period of student teaching in order to get a credential to teach in secondary schools in the State of California. Under the circumstances known to her at the time of trial, Lois felt she would complete her credential work by the end of May 1994 and should be obtaining work if all went well in September 1994. Lois had not been gainfully employed since 1980, had done some minor work in a real estate office but did not get paid for it and once had a real estate agent's license which had lapsed. In 1974, when working at the same firm as Robert, Lois earned $15,000 per year as an accountant. She was attempting to obtain her teaching credential in order to avoid working for something between $4 and $8 an hour for the rest of her life.

At the time of trial in April 1992, Lois was afflicted with a pulmonary problem she had been coping with since 1974. In 1974, she had a collapsed lung, with a number of cysts on the noncollapsed lung. At the time of trial, she was taking medication for that condition which was of unknown etiology. Lois also had Hashimoto's disease which causes difficulties with her

glands and for which she was receiving medication. The disease had attacked the eye ducts and she had recently had surgery for that condition.

Lois was paying her own medical insurance at $150 per month and the insurance was scheduled to expire in November of 1992. Of the $64,000 she received from the property settlement at the time of dissolution of the marriage, she had spent $20,000 on medical services and had $7,000 left.

At trial, Lois requested the trial court retain jurisdiction and review the matter in several years to determine whether or not modifications or termination of jurisdiction was appropriate. On April 3, 1992, the trial court announced its findings from the bench. On September 21, 1992, the court filed written findings including the following:

"II

"SPOUSAL SUPPORT

". . . . . . . . . . . . . . . . . . . . . . . . . .

"9. The court finds the judgment recited Respondent's gross income at the time of dissolution was $9,695 per month. The court finds Respondent's present gross income to be $5,000 per month. The court finds Petitioner had zero income at dissolution and has zero income today.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"13. The court has considered the marketable skills of Petitioner. The court concludes that Petitioner is presently employable with a capacity to earn approximately $7.50 per hour. The court bas[e]s this conclusion after Petitioner's testimony that she could earn between $6 and $8 per hour.

"14. The court finds Petitioner has health problems but that these problems at present do not impact Petitioner from living, going to school and having hopefully a long normal life.

"15. The court has considered the extent to which Petitioner contributed to Respondent's education, training, career and position. The court finds there is no indication that Petitioner has heretofore assisted Respondent in that regard.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"17. The court has considered the duration of the marriage and the support paid to date.

"18. The court finds that Petitioner may have a bachelor's degree and that she may thereafter be employable as a school teacher on or about June, 1994. The court finds that Petitioner is working diligently on said educational program full time to become a teacher at this time. The court finds Petitioner wants to be a school teacher.

"19. The court finds that by becoming a full time student Petitioner has made herself less employable during the school's duration. The court finds Petitioner has prevented herself from earning money in a full time employment while pursuing her teaching credential. The court does not know whether or not Petitioner has the right to do that and expect Respondent to pay for it.

"17. [*sic*] The court finds Petitioner intermarried [*sic*] for the first time at the age of 17 years. The court does not know when she contracted her second marriage.

"18. [*sic*] The court is aware of the *Heistermann* decision by the Fourth District Court of Appeal[]. The court is also aware of the *Wilson* decision by the same court. These decisions appear to be in conflict to this court. The court further understands that legislation has defined this marriage as being a long term marriage by statute. The court finds that statute does not address modification proceedings.

"19. [*sic*] The court has considered the terrible pain of the parties in going through one of these proceedings. The court has considered what they have gone through and what they may go through hereafter.

"20. The court finds Petitioner has expended in excess of $40,000 in attorney's fees and that Respondent has expended between $10-$15,000 in addition to this court's attorney fee order in favor of Petitioner to get to this point in the proceedings. The court finds Respondent makes a gross income of $60,000 per year. The court finds it is not practical for two people to have to incur modification expenses such as those incurred by the parties and then be expected to return to court in 1-2 years and to 'try again' . . . nor is it reasonable for the court to ask them to return for a review.

"III

"LEGAL BASIS

"The legal basis for the court's decision is:

1. *In re [M]arriage of Heistermann* (1991) 234 CA 3d 1195 [286 Cal.Rptr. 127];

2. *In re [M]arriage of Wilson* (1988) 201 CA 3d 913 [247 Cal.Rptr. 522]; and

3. Civil Code § 4801."

The court's September 22, 1992, order modified spousal support as follows:

a. $2,500 per month through January 31, 1991;

b. $1,500 per month for the period February 1, 1991, through April 30, 1991;

c. $1,350 per month for the period May 1, 1991, to June 1, 1994.

The September 22, 1992, order provided for payment of spousal support by wage assignment, found Lois had zero income and was a full-time student while Robert had $5,000 gross monthly income, required payment of arrearages in spousal support within 30 days, required Robert to maintain, as spousal support, his $50,000 life insurance policy with Lois the beneficiary as to one-half for the duration of his spousal support obligation and provided for payment of attorney fees by Robert to Lois.

With respect to its jurisdiction over spousal support, the court order reads:

"The court retains continuing jurisdiction to alter, terminate or modify said spousal support upon proper motion first having been made to the court on or before June 1, 1994. Said spousal support shall cease upon the remarriage of Petitioner or death of either party.

"All jurisdiction of this court to alter, terminate o[r] modify said spousal support shall cease on June 1, 1994. Pursuant to *In re [M]arriage of Vomacka* (1984) 36 [Cal.] 3rd 459 [204 Cal.Rptr. 568, 683 P.2d 248], the court shall not have jurisdiction to extend spousal support payments or spousal support jurisdiction beyond June 1, 1994."

## DISCUSSION

### I

There is no question raised by the parties that the applicable standard of review is whether the trial court abused its discretion in entering the order in question. (See *In re Marriage of Wilson* (1988) 201 Cal.App.3d 913, 916 [247 Cal.Rptr. 522], "Wide discretion is vested in the trial court in determining the amount and duration of spousal support.") The appropriate

guideline by which the court's discretion is tested is to be found in former Civil Code section 4801, subdivision (a) (now Family Code,[1] § 4320) reading:

"In ordering spousal support under this part, the court shall consider all of the following circumstances:

"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

"(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.

"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

"(c) The ability to pay of the supporting party, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

"(e) The obligations and assets, including the separate property, of each party.

"(f) The duration of the marriage.

"(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

---

[1]Effective January 1, 1994, the Civil Code provisions were repealed and reenacted in various sections in the new Family Code. (Stats. 1992, ch. 162; Stats. 1993, chs. 219, 876.)

For the most part we quote the Family Code provisions in this opinion. Unspecified statutory references are to the Family Code.

"(h) The age and health of the parties.

"(i) The immediate and specific tax consequences to each party.

"(j) Any other factors the court determines are just and equitable."

The portion of former Civil Code section 4801, subdivision (d), much of which is now Family Code section 4336, subdivisions (a) through (c), reads:

"(a) Except on written agreement of the parties to the contrary or a court order terminating spousal support, the court retains jurisdiction indefinitely in a proceeding for dissolution of marriage or for legal separation of the parties where the marriage is of long duration.

"(b) For the purpose of retaining jurisdiction, there is a presumption affecting the burden of producing evidence that a marriage of 10 years or more, from the date of marriage to the date of separation, is a marriage of long duration. However, the court may consider periods of separation during the marriage in determining whether the marriage is in fact of long duration. Nothing in this subdivision precludes a court from determining that a marriage of less than 10 years is a marriage of long duration.

"(c) Nothing in this section limits the court's discretion to terminate spousal support in later proceedings on a showing of changed circumstances."

The Christies' 13-year marriage comes within the statutory definition of a "marriage of long duration." Thus, the provisions of former Civil Code section 4801, subdivision (d), now Family Code section 4336, apply to this case. All this means here, however, is that the court retained jurisdiction indefinitely until it entered "a court order terminating spousal support," (§ 4336, subd. (a); see also § 4335[2]) but there was no limitation on "the court's discretion to terminate spousal support in later proceedings on a showing of changed circumstances" (§ 4336, subd. (c)). ■ The first question in this case thus becomes whether there was a showing of changed circumstances in the 1992 hearing supporting the court's exercise of its discretion in ordering termination of its jurisdiction to alter, terminate or modify spousal support as of June 1, 1994. This question must be addressed in the context of the policies disfavoring absolute termination of spousal support on a specified date and requiring in the case of ambiguity in the

[2]Family Code section section 4335 reads: "An order for spousal support terminates at the end of the period provided in the order and shall not be extended unless the court retains jurisdiction in the order or under Section 4336." (Former Civ. Code, § 4801, subd. (d).)

language of a marital settlement agreement that it must be construed in favor of the right to spousal support. (*In re Marriage of Vomacka* (1984) 36 Cal.3d 459, 467, 469 [204 Cal.Rptr. 568, 683 P.2d 248]; *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41]; *In re Marriage of Moore* (1980) 113 Cal.App.3d 22, 28 [169 Cal.Rptr. 619].)

██ The policy involved here, disfavoring absolute termination on a date certain, requires that such an order will be overturned as an abuse of discretion " 'unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction. . . . If the record does not contain evidence of the supported spouse's ability to meet his of her future needs, the court should not "burn its bridges" and fail to retain jurisdiction. [Citation.]' " (*In re Marriage of Vomacka, supra,* 36 Cal.3d at p. 467, quoting *In re Marriage of Morrison, supra,* 20 Cal.3d at p. 453.) In other words, to support a date-certain termination of a spousal support order there must be evidence in the record the supported spouse " 'would be able to provide for herself at that time.' " (36 Cal.3d at p. 468.)

██ The evidence, mostly from Lois, about her excellent educational preparation for a teaching career, including her consistent membership on the dean's list, her expectation about being credentialed by May 1994 and her obtaining a teaching job in September 1994, is substantial that she would be able to adequately meet her future financial needs and provide for herself at the time selected for termination of spousal support. This evidence also demonstrates a change of circumstances from Lois's earlier status during the support period as an untrained, supported person to that of a person who would be a fully qualified professional teacher by the date of spousal support termination. At the time of the hearing, Lois's educational achievement was a demonstrated reality with completion appearing relatively certain.

The trial court expressed concern with two cases from this court which it viewed as in conflict. Those cases involved a supported spouse who was permanently disabled at the time of the order. In *In re Marriage of Heistermann* (1991) 234 Cal.App.3d 1195 [286 Cal.Rptr. 127], an order terminating spousal support after a total support period of nearly six years was overturned for lack of a finding of changed circumstances at the time of the order. The marriage had lasted 1 month short of 9 years and the supported spouse was 54 years old at the time of the dissolution, had not worked for 14 or 15 years and had disabling arthritis and emotional problems. The trial court had ordered termination not on the basis of its finding changed circumstances in the form of the supported spouse's cohabitation, then terminated, and possible employability, but rather on the basis that the time

had come to shift the burden of support to society. (*Id.* at p. 1203.) We reversed the support termination order because the trial "court identified no change of circumstances to support its order setting a termination date for actual support and terminating jurisdiction," (*id.* at p. 1197) stating in part: "Here, although the almost nine-year marriage may be characterized as of medium duration, given the original support order which recognized [wife's] assumption of domestic responsibilities when she was in her forties at [husband's] request, and which did not find the circumstances warranted an order that she enter the work force, termination of support cannot now be justified absent some changed circumstance which shows she will be self-supporting at a particular date or other factors which justify modification." (*Id.* at p. 1204.)

*Heistermann* summarized: "[T]he focus of the trial court's decision, as reflected in its written statement, was not that [wife] would no longer need support nor that the equities had shifted based on changed circumstances, but was its erroneous perception that the mere passage of time required it to shift the support obligation from the ex-spouse to society and to terminate its jurisdiction over spousal support." (234 Cal.App.3d at p. 1204.)

Here, there was no such erroneous focus on the mere passage of time requiring the court to shift the support obligation to society. Rather, as we have seen, a demonstrated change of circumstances in terms of Lois's employment and earning capability is present. Thus, there is no similarity between this case and *Heistermann.*

Likewise, there is no similarity between this case and *In re Marriage of Wilson, supra,* 201 Cal.App.3d 913, which involved a relatively short-term marriage of five years, ten months, an original stipulation incorporated into the judgment that there would be a spousal support term of only two years and, after extensions, a total support period of four years, ten months. The supported spouse had entered the marriage when she was in her 40's and was working as a bartender. She became disabled during the marriage and could no longer work as a bartender and regain her previous income-earning status. At the time of the original two-year support stipulation, the extent of her injuries was apparent. Nevertheless, the trial court had extended support until the support period nearly equaled the length of the marriage. At the time of the hearing leading to the termination order she was 48 years old. The supporting spouse, a military retiree whose career was completed or substantially completed before the marriage, was 46. (*Id.* at pp. 916, 918.) Before ordering the termination of spousal support, the trial court weighed

the factors in section 4320. (201 Cal.App.3d at p. 917.) It balanced the equities and under the circumstances decided the obligation to assist the supported spouse should shift from the husband to society.

Upholding the trial court's order terminating spousal support in *Wilson*, we pointed out that unlike the situation in *In re Marriage of Morrison, supra*, 20 Cal.3d 437, the marriage was not lengthy and the supported spouse was not a "displaced homemaker." (*In re Marriage of Wilson, supra*, 201 Cal.App.3d 913, 918.) Moreover, on their separation the parties originally had agreed to a two-year term of support. (*Id.* at p. 919.) Thus, we determined the trial court logically and reasonably applied the section 4320 factors, noting self-support and length of marriage are each but one factor in the formula which involves balancing of each in light of the others, even where a permanently disabled spouse may be denied support. (*Id.* at p. 920.)

Except to the extent of its consideration and application of the abuse of discretion standard, *Wilson* is not particularly applicable to this case considering the short term marriage there involved, the ages and abilities of the parties, the original limitation on the term of spousal support, and the disability of the supported spouse. Nevertheless, *Wilson* tends to demonstrate the breadth of the trial court's discretion in a case where termination of ongoing spousal support is in issue. *Wilson* suggests that so long as there is a proper weighing of the appropriate factors, it is likely the trial court's exercise of its discretion in the matter will be upheld.

The record here shows the trial court properly exercised its discretion in setting the termination date for spousal support.

## II

Did the trial court err in ordering an immediate termination of its jurisdiction to extend spousal support payments or spousal support jurisdiction beyond June 1, 1994? Yes. As discussed in part I, upon a proper showing of changed circumstances in this spousal support termination proceeding involving a former marriage of long duration, it is within the court's discretion to establish a date certain for termination of spousal support. (§ 4336, subd. (c).) In addition, in its original order, the court could have deprived itself of authority to extend spousal support beyond a fixed date by setting such a cutoff date and not making "an express reservation of jurisdiction in the original decree." (*In re Marriage of Foreman* (1986) 183 Cal.App.3d 129, 134 [228 Cal.Rptr. 4].) In *Foreman* this court construed and

reconciled the language of former Civil Code section 4811, subdivision (b),[3] (see now Fam. Code, §§ 3590, 3591;[4] see also § 3651) providing that spousal support is modifiable unless the agreement or decree contains specific language making it nonmodifiable, and former Civil Code section 4801, subdivision (d),[5] (see now Fam. Code, § 4335[6]) providing that an order for spousal support terminates at the end of the period specified in the order and shall not be extended unless the court retains jurisdiction in the original order.

[3]Former Civil Code section 4811, subdivision (b), provided in part: "The provisions of any agreement for the support of either party shall be deemed to be separate and severable from the provisions of the agreement relating to property. All orders for the support of either party based on the agreement shall be deemed law-imposed and shall be deemed made under the power of the court to make the orders. *The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order*, except as to any amount that may have accrued prior to the date of filing of the notice of motion or order to show cause to modify or revoke, and except to the extent that any written agreement, or, if there is no written agreement, any oral agreement entered into in open court between the parties, specifically provides to the contrary." (Stats. 1983, ch. 1304, § 8, pp. 5251-5252, italics added.)

[4]Family Code section 3590 reads: "The provisions of an agreement for support of either party shall be deemed to be separate and severable from the provisions of the agreement relating to property. An order for support of either party based on the agreement shall be law-imposed and shall be made under the power of the court to order spousal support."

Family Code section 3591 reads:

"(a) Except as provided in subdivisions (b) and (c), *the provisions of an agreement for the support of either party are subject to subsequent modification or termination by court order.*

"(b) An agreement may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate.

"(c) An agreement for spousal support may not be modified or revoked to the extent that a written agreement, or, if there is no written agreement, an oral agreement entered into in open court between the parties, specifically provides that the spousal support is not subject to modification or termination." (Italics added.)

[5]Former Civil Code section 4801, subdivision (d), as construed in *Foreman* read in part: "An order for payment of an allowance for the support of one of the parties shall terminate at the end of the period specified in the order and shall not be extended unless the court in its original order retains jurisdiction." (Stats. 1986, ch. 1096, § 1, p. 3838.)

At the time *Foreman* was decided, former Civil Code section 4801, subdivision (d), did not yet contain the provisions applicable to marriages of long duration that were added in 1987. (See *In re Marriage of Jones* (1990) 222 Cap.App.3d 505, 513-514 [271 Cal.Rptr. 761]; Stats. 1987, ch. 1086, § 2, p. 3676.) Nevertheless, there is continued vitality in *Foreman*'s interpretation of the portion of former Civil Code section 4801, subdivision (d), which parallels Family Code section 4335's more generally applicable provision: "An order for spousal support terminates at the end of the period provided in the order and shall not be extended unless the court retains jurisdiction in the order or under Section 4336." (222 Cal.App.3d at p. 513.)

[6]Section 4335, *ante*, footnote 2, reads somewhat differently from former Civil Code section 4801, subdivision (d), *ante*, footnote 5. With respect to the court's retention of jurisdiction, this provision deletes any reference to the original order and adds a reference to section 4336. The last clause of section 4335 now reads that a spousal support order terminates at the end of the period provided in the order and "shall not be extended unless the court retains jurisdiction in the order or under Section 4336."

*Foreman* noted that under *In re Marriage of Vomacka, supra,* 36 Cal.3d 459, 470, "retention of jurisdiction to extend spousal support payments may be reasonably implied even in the absence of plain language in the court order to that effect. . . . Language in spousal support orders *suggesting* modification of their terms will be permitted and routinely interpreted as a retention of the court's fundamental jurisdiction to modify, and, upon a proper factual showing, to extend spousal support provisions contained therein. [Citation.]" (*In re Marriage of Foreman, supra,* 183 Cal.App.3d at p. 132, italics in original.) This court observed that *Vomacka, supra,* 36 Cal.3d at p. 470,[7] and *In re Marriage of Benson* (1985) 171 Cal.App.3d 907, 910 [217 Cal.Rptr. 589],[8] both involved implied retention of jurisdiction over spousal support sufficient to authorize the trial court to extend the period of support beyond the cutoff date set in the original decree so long as the motion for such a modification was made before the cutoff date. (*Foreman, supra,* 183 Cal.App.3d at pp. 132-134.)

The decree under review in *Foreman,* however, did not permit such an implied reservation of jurisdiction. The 1974 decree ending the parties' 23-year marriage provided that the monthly payment was to continue until the supported spouse remarried, either party died, or 10 years passed, whichever first occurred, with an additional "jurisdictional amount of $1.00 per year" for one year. (183 Cal.App.3d at p. 131.) The decree provided these "spousal support payments . . . shall not be modifiable under any circumstances until June 30, 1977 [covering the first three years]. Thereafter, said support payments may be modified by the court on a proper showing by either party." (*Id.* at p. 134, italics omitted.) We held that this language, in its express references to "payments," was limited to modifications of the amount of payments, and did not imply a reservation of jurisdiction to extend the period of spousal support. We thus upheld the trial court's order denying an extension of spousal support beyond the 11th year, but increasing the amount for that last year from $1 to the monthly amount awarded during the initial 10-year period. (*Ibid.*) In the analysis leading to this conclusion we stated: "[S]ection 4811 [now Fam. Code, §§ 3590, 3591 and 3651] must be deemed to refer only to the power to modify the terms of the support order for the time period designated in the original order of support, and the ability

---

[7] In *In re Marriage of Vomacka, supra,* 36 Cal.3d 459, 461-462, the trial court reserved jurisdiction by continuing spousal support payments "until further order from the Court," the death of either party, remarriage of the supported spouse or a specified date (representing about three years), whichever is first to occur, and to award support or to act on a request for such an award within a later specified period (representing about two additional years).

[8] In *In re Marriage of Benson, supra,* 171 Cal.App.3d 907, 910, the court reserved jurisdiction by ordering the support to continue until the earlier of the death of either party, remarriage, until " 'modified by a court of competent jurisdiction,' " (italics omitted) or expiration of a specified period of years (eight years).

to extend that period of time deemed legislatively limited by section 4801, subdivision (d) [now in § 4335] to those situations where there has been an express reservation of jurisdiction in the original decree." (*Ibid.*)

Accordingly, analysis of the reservation of spousal support jurisdiction issue must begin with the original decree. Its language must be examined to see if there is an express or implied reservation of jurisdiction to extend the period of support set forth in the order. If there is a reservation of jurisdiction in the order or under Family Code section 4336, then the spousal support period may be extended. Of course, if the order does not fix a period after which the payment of spousal support shall terminate, then Family Code section 4335 does not apply.

Family Code section 4335 is not applicable to the original order here since the court did not set a cutoff date. Instead, the original order in this case is subject to Family Code section 4336 which provides that a court "retains jurisdiction indefinitely" over spousal support where the marriage is of long duration, "[e]xcept on written agreement of the parties to the contrary or a court order terminating spousal support . . . ." (§ 4336, subd. (a).) However, nothing in section 4336 limits the court's discretion "to terminate spousal support in later proceedings on a showing of changed circumstances." (§ 4336, subd. (c).) In other words, the language in the marital settlement agreement and original decree providing "Husband's obligation to pay spousal support to Wife shall terminate upon Husband's death, Wife's death, Wife's remarriage, or further order of court, whichever shall first occur," constituted a retention of jurisdiction over spousal support. (*In re Marriage of Vomacka, supra,* 36 Cal.3d at p. 470, language in decree continuing support payments "until further order from the Court," (italics omitted) among other stated contingencies and a specific termination date, retains court's jurisdiction to modify, including extend, spousal support when the motion for modification is made before the cutoff date of support under the original award; see also *In re Marriage of Foreman, supra,* 183 Cal.App.3d at pp. 132, 133.) In addition, since the original order contained no cutoff date in the spousal support provision, i.e., no "written agreement of the parties to the contrary or a court order terminating spousal support," the provisions of section 4336 (former Civ. Code, § 4801, subd. (d)) came into play. Thus, the court retained jurisdiction "indefinitely" in this marriage of long duration.

What does this state of the law applicable to the case at bar mean in terms of the court's authority to immediately end its jurisdiction to extend spousal support beyond the date it has fixed for termination of support? In *Vomacka,* the court stated: "[W]here jurisdiction to award, or grant requests for, spousal support is reserved until a specified date the court has fundamental

jurisdiction until that date to take new action concerning such support. Such new judicial action may include an extension of spousal support beyond the last date the court can act." (*In re Marriage of Vomacka, supra,* 36 Cal.3d at p. 474.)

When applied to the order here under review, *Vomacka*'s statement rather clearly directs that the trial court, in modifying the spousal support obligation by establishing a certain date for its termination while retaining its "continuing jurisdiction to alter, terminate or modify" the award, retains "fundamental jurisdiction" to extend the support beyond that date. This conclusion is fully consistent with the language of Family Code section 4336, subdivision (a), referring to the court's retaining its spousal support "jurisdiction indefinitely." Moreover, there is nothing in this or any other section that would call for a contrary conclusion. Rather, the modification order under review, to the extent it sets a termination date and retains jurisdiction, also fits within Family Code section 4335 because the court "retains jurisdiction in the order [and] under Section 4336."

Giving effect to the above quoted language of *Vomacka* and its strongly worded policy against orders providing for absolute termination of spousal support on a specified date, particularly with respect to lengthy marriages (*In re Marriage of Vomacka, supra,* 36 Cal.3d at p. 467), we conclude the trial court erred in immediately terminating its jurisdiction to extend spousal support beyond June 1, 1994.

Lois should be given a reasonable time, not exceeding 60 days after remittitur issues, to petition the court and show good cause why spousal support should be continued beyond June 1, 1994.

We note that to date Lois has shown no prejudice as a result of the order. In this connection Lois's argument that the order violates her constitutional rights was not raised in the trial court[9] and will not be considered for the first time on appeal. (See *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512], " ' "It is the general rule applicable in civil cases that a constitutional question must be raised at the earliest opportunity or it will be considered as waived." ' " [quoting *Jenner* v. *City Council* (1958) 164 Cal.App.2d 490, 498 (331 P.2d 176)]; see also *Damiani* v. *Albert* (1957) 48 Cal.2d 15, 18 [306 P.2d 780]; *In re Joseph E.* (1981) 124 Cal.App.3d 653, 657 [177 Cal.Rptr. 546].)

### DISPOSITION

The order immediately terminating the court's jurisdiction to extend spousal support beyond June 1, 1994, is reversed. Lois shall have 60 days

---

[9]In the trial court Lois argued only that termination of spousal support "would be at least at this point very respectfully an abuse of discretion . . . ."

after remittitur issues to petition the court to show good cause why jurisdiction over spousal support should continue beyond June 1, 1994. In all other respects, the order is affirmed. Each party shall bear his and her respective costs on appeal.

Huffman, J., and Froehlich, J., concurred.