Filed 3/13/25  Miller v. Cabrera CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JERRY A. MILLER et al., | |
| Plaintiffs and Appellants, | E081203 |
| v. | (Super.Ct.No. RIC1611557) |
| JOSE J. CABRERA et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Randall S. Stamen, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Richard V. McMillan for Plaintiffs and Appellants.

Thomas N. Jacobson for Defendants and Respondents.

# INTRODUCTION

The parties to this action own property in a rural area of Riverside County. For several years now, they have been litigating access to a dirt road known as Courtney Lane. This is the second time the matter has come to this court on appeal.

Courtney Lane and another dirt road known as Estelle Mountain Road run through property owned by defendants and respondents Jose Cabrera and Brenda Cobb-Cabrera (collectively the Cabreras). Several of the Cabreras' neighbors use these roads to access their own properties. In June 2016, after having brought livestock to their property, the Cabreras put up a gate blocking Courtney Lane. A few months later, five of the Cabreras' neighbors (collectively plaintiffs) filed the current action seeking to quiet title to prescriptive easements over Courtney Lane and Estelle Mountain Road and for declaratory relief. The parties later settled their claim as to Estelle Mountain Road. In our initial nonpublished opinion in this matter, we held the plaintiffs established their right to a prescriptive easement over Courtney Lane and remanded for the trial court to hold a further trial on one issue: whether the Cabreras could maintain gates across Courtney Lane without violating the plaintiffs' right to the prescriptive easement. (*Miller et al. v. Cabrera et al.* (Nov. 8, 2021, E075257) [nonpub. opn.] (*Cabrera I.*).)[1]

The parties litigated this issue on remand. The trial court ruled in plaintiffs' favor and directed the Cabreras to remove the gates from Courtney Lane. Plaintiffs also sought

---

[1] By an order dated October 17, 2023, we granted plaintiffs' request to take judicial notice of our opinion in *Cabrera I.*, *supra*, E075257. (Evid. Code, §§ 452, subd. (d)(1), 459.)

to present evidence of damages under a slander of title theory of recovery and requested the court make a finding that the Cabreras acted with malice or oppression in blocking Courtney Lane. The court denied the request to present evidence of damages because it was beyond the scope of this court's remand directions, and it did not make the requested finding that the Cabreras acted with malice or oppression. Plaintiffs also sought to recover their litigation costs, including costs from the initial appeal. The court awarded plaintiffs most of their claimed costs but reduced the cost award by approximately $4,000 in response to the Cabreras' motion to tax costs.

Two of the plaintiffs, Jerry Miller and Frank Arculeo filed the current appeal. Miller and Arculeo appeal the denial of their request to present evidence of damages, the trial court's failure to make a finding that the Cabreras acted with malice or oppression, and the partial granting of the Cabreras' motion to tax costs. The Cabreras counter each of these claims and assert the appeal is frivolous.

We partially reverse the court's ruling on the motion to tax costs and in all other respects affirm the judgment.

## BACKGROUND

The complaint alleged two causes of action. The first sought to quiet title to prescriptive easements over Courtney Lane and Estelle Mountain Road, and the second requested declaratory relief. The parties litigated these claims in a bench trial in 2018, although they entered a settlement agreement related to Estelle Mountain Road before the court entered judgment. The settlement agreement, which was filed in the form of a

3

stipulation and order, granted plaintiffs the right to use Estelle Mountain Road until the County dedicates the roadway or establishes dedicated roads in the area.

1. *Underlying Facts Related to the Dispute Over Courtney Lane*

The following facts are taken from our opinion in *Cabrera I*.

"Each of the parties owns property in the Gavilan Hills region of Perris. Attachment A [to our opinion in *Cabrera I.*] is a map showing the locations of their respective properties and the surrounding roads.

"Everyone who lives in the Gavilan Hills has to get there via Estelle Mountain Road. None of the roads in the Gavilan Hills are paved.

"Arculeo had owned his property since 1978. Miller had owned his property since 1988. Lutz had owned his property since 2003. The Beckmans had owned their property since 2014.

"The Cabreras bought their property in 2015.

"A road (or path or trail), sometimes known as Courtney Lane, runs across the Cabreras' property. Courtney enters the Cabreras' property at Estelle Mountain Road, on the eastern side. As it runs to the western side, it forks. As of the beginning of 2016, the northern fork provided the only access to the Miller, Lutz, and Beckman properties. The southern fork provided the easiest access (though not the only access) to the Arculeo property. (See attachment A [to our opinion in *Cabrera I.*].)

"Aerial photos showed that Courtney had existed at least since 1974. Cobb-Cabrera admitted that, before purchasing her property, she was aware of Courtney.

4

"Arculeo lived on his property.  To go to and from his property, he and his family had always used Courtney.  He believed he had a right to do so, because '[i]t was the road to [his] house.'  He knew it was a private road, not a public road.

"Miller, too, lived on his property.  To get to and from his property, he and his family had always used Courtney.  He believed he had a right to do so because '[n]obody ever told [him he] couldn't.'  In addition, after five years, he understood that he had a prescriptive right to Courtney.  He knew it was a private road, not a public road.

"The Beckmans lived on their property.  To get to their property, they had always used Courtney.  They believed they had a right to do so because it was the way to get to their property.

"Gonzalo Fuerte was the Beckmans' predecessor in interest.  He owned their property from 1998 to 2014.  He lived there for about two years, from 2005 to 2007.  Otherwise, he rented it out.  To get to and from his property, he had always used Courtney.  He believed he had a right to, because 'it was the only in and out.'  His tenants also always used Courtney.

"Lutz did not live on his property.  However, he went there '[s]ometimes once a month, sometimes several times a month.'  To get to and from his property, he had always used Courtney.  He believed he had the right to, because '[i]t was a road that everybody in the neighborhood used . . . .'

"Miller had a bulldozer; he, with the help of others in the neighborhood, maintained Courtney.  Arculeo and Fuerte contributed money to the maintenance.

5

"The Cabreras did not live on their property. However, they went there regularly; Cabrera was vague about how often, but apparently, at least sometimes, they went every weekend. At some point, they put in a recreational vehicle; sometimes they stayed in it overnight.

"The Cabreras admitted seeing Miller and his wife driving on Courtney. They denied seeing any of the other plaintiffs, although Cabrera admitted seeing an unidentified white truck "sometimes."

"On June 11, 2016, the Cabreras installed a gate at Courtney and Estelle Mountain Road. They posted two signs on the gate. One said, 'Private property. Right to pass by permission and subject to control of owner,' citing Civil Code section 1008. The other said that the gate was not locked. The Cabreras also fenced off their land. They brought livestock onto the property.

"According to the Cabreras, the gates were never locked, although they were closed with a chain and a carabiner. According to the plaintiffs, however, the gates were usually or always locked.

"On June 11, 2016, as the Cabreras were installing the gate, Miller parked his truck at the scene and called the police. Miller and Cabrera had an argument and/or discussion.

"According to the Cabreras, it went as follows:

"Miller: 'You can't put this gate here. We have an easement.'

"Cabrera: 'This is my property.'

6

"Miller:  'If you cut us [a] road up there at the easement [referring to an extension of Arculeo Road], we will not drive through your property.'

"Cabrera:  'I will cut you the road as you requested.'

"Miller:  'If you do so, we will not drive on your property.'

"Cabrera, the Cabreras' son, and a long-time friend of the Cabreras substantially confirmed this account.

"Miller denied entering into any such agreement.  A friend of Miller testified likewise.  Miller also denied that he was acting for any of the other plaintiffs.  Lutz and the Beckmans agreed that Miller was not acting for them.

"About a week after the asserted oral agreement, the Cabreras had a professional grader grade an extension of Arculeo Road.  The extension was built in an existing 30-foot easement along the western boundary line of the Cabreras' property.  It cost them approximately $10,000.

"The company that did the grading placed 'a wall of dirt' seven feet high at the intersection of Arculeo and Courtney.  This made Courtney impassable, regardless of whether the gate was locked.  When Miller saw this, he remonstrated with the grading operator.  He also called the police again.

"In his interrogatory responses, Cabrera did not mention any agreement with Miller.  Rather, he said that he graded the Arculeo extension as 'a neighborly act.'

"The extension provided Miller, Lutz, and the Beckmans with access to their property.  However, they had to go first farther south on Estelle Mountain Road, then

west on Fire Ring Circle, and finally north on Arculeo and the extension, so it was a longer and more time-consuming route.

"The extension had two very steep portions. Vehicles going uphill would lose traction. Sometimes it took garbage trucks 'as many as three tries' to go up.

"Moreover, the steep portions made the extension unsafe, because there was 'no clear line of sight.' The extension had room for only one vehicle at a time. A vehicle going uphill had to have 'a running start,' but the driver would not be able to see if there was another vehicle coming downhill.

"Google Maps continued to show Courtney as the route to the plaintiffs' properties. Third parties, such as delivery drivers, had trouble finding their way there." (*Cabrera I.*, *supra*, E075257, fn. omitted).

2. *The Initial Judgment and Appeal*

In the initial judgment, the trial court did not decide whether plaintiffs were entitled to the claimed prescriptive easement over Courtney Lane. Instead, it found that Miller, "on his own behalf and as the ostensible agent of the other Plaintiffs," had entered into a settlement agreement with the Cabreras, in which the Cabreras would build an extension of Arculeo Road for the neighbors to use, and in exchange, the neighbors would drop their claims to Courtney Lane. The court further found that the Cabreras built the promised extension and had thus substantially performed the settlement agreement.

Arculeo and Miller appealed, and we reversed the judgment. We held there was no evidence Miller entered into the asserted oral agreement as the agent of the other plaintiffs, and that the plaintiffs established they were entitled to the claimed prescriptive easement. (*Cabrera I.*, *supra*, E075257.) Our opinion "direct[ed] the trial court to hold a further trial on one question: Whether the Cabreras can maintain gates across Courtney in a way that will minimize the interference with their use of their own property, yet will not violate the plaintiffs' right to a prescriptive easement." (*Ibid.*) The disposition stated: "The judgment is reversed. On remand, the trial court must hold a further trial to determine whether the Cabreras can maintain gates across Courtney in a way that will minimize the interference with their use of their own property, yet will not violate the plaintiffs' right to a prescriptive easement. The trial court must then enter judgment awarding the plaintiffs a prescriptive easement over Courtney, the scope of which must be in accordance with its finding on this question." (*Ibid.*)

3. *Proceedings on Remand*

A. *Denial of Plaintiffs' Request to Present Evidence of Damages*

Leading up to the trial on remand, plaintiffs filed a trial brief that asserted the trial should encompass two issues: the scope of the easement and damages. Plaintiffs asserted they were entitled to pecuniary damages for slander of title, which included attorney fees and litigation costs, and that they were entitled to punitive damages.

On the first day of trial, plaintiffs' counsel asked the court if the testimony was limited to the scope of the easement, or if he should also address damages. The court

said it did not wish to hear testimony about damages. The court directed counsel to "the Court of Appeal's determination as to what we should be hearing in this portion or in this trial," and stated it "can say nothing further."

The court later heard argument on the issue. Plaintiffs continued to assert they were entitled to pecuniary damages for slander of title, but instead of an award of punitive damages, their counsel requested the court make a finding that the Cabreras acted with malice or oppression in blocking Courtney Lane. The court asked where slander of title was alleged in the complaint. Plaintiffs' counsel responded that slander of title was not alleged "within the caption" but he asserted the complaint alleged sufficient facts to state a cause of action for slander of title.[2] Counsel for the Cabreras disagreed and argued the allegations in the complaint did not establish slander of title. In particular, he argued there was not a publication, as required. He also argued that with adverse possession or a prescriptive easement, the plaintiff must first establish their right to the property through a judicial proceeding against the record owner, which had not yet occurred.

Plaintiffs' counsel responded by requesting to amend the complaint to proof. He asserted the facts presented in the initial trial indicated that a dispute arose as to whether there was an easement. The police were called, and the Cabreras advised the officer that there was not an easement on their property, which established the publication

---

**2** As discussed more below, slander of title occurs when there is an unprivileged publication of a false statement which disparages title to the plaintiff's property and causes pecuniary loss. (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030 (*Sumner Hill*).)

10

requirement.  The Cabreras' counsel argued that if plaintiffs wanted to conform the complaint to proof, they should have done so after the initial trial.  Allowing plaintiffs to do so now, and to present evidence of damages at this stage of the proceedings would prejudice the Cabreras.  Counsel for the Cabreras further argued that the parties were limited by the opinion in *Cabrera I.*, *supra*, E075257, to only addressing the scope of the easement.  Plaintiffs' counsel responded that they did not have the opportunity to present evidence of damages in the initial proceeding because the court entered judgment against them and never held a hearing on damages.

The court denied plaintiffs' request to amend the complaint and stated it would not hear any further argument or evidence on the issue of damages.

B.  *Ruling on the Gates Issue and Entry of Judgment*

Following a two-day bench trial, the court ruled the Cabreras could not maintain gates across Courtney Lane.[3]  The judgment, which the court filed on March 29, 2023, awarded each plaintiff a nonexclusive prescriptive easement over Courtney Lane for purposes of residential use, and directed the Cabreras to immediately remove any gates or other conditions which obstruct or interfere with the easement.  The judgment also awarded plaintiffs $8,115.34 in costs.  It did not award any monetary damages.

C.  *Costs*

Our opinion in *Cabrera I.* awarded plaintiffs their costs on appeal.  (*Cabrera I.*, *supra*, E075257.)  On January 12, 2022, two days after the remittitur issued, plaintiffs

---

[3]     We do not address the facts underlying this ruling as neither party has challenged it on appeal.

filed a memorandum of costs in the trial court claiming they were entitled to $3,281.50 in appellate costs. The Cabreras did not file a motion to tax these costs.

After the trial on remand, plaintiffs filed another memorandum of costs, followed by an amended memorandum on September 8, 2022 (Sept. 8 amended memo.), which claimed $13,233.59 in costs. Among other costs, appellants sought to recover a $60 filing fee for a motion to compel filed in the trial court, an $808.75 filing fee for a petition for writ of mandate filed in this court, and $3,281.50 for "[a]ppellate [c]osts per [m]emorandum."

On September 12, 2022, the Cabreras filed a motion to tax several of the costs claimed in the Sept. 8 amended memo. After further briefing and a hearing on the motion, the court issued a written ruling striking the $60 filing fee for the motion to compel, the $808.75 filing fee for the petition for writ of mandate, and the $3,281.50 in appellate costs.

Plaintiffs Miller and Arcuelo timely filed their notice of appeal on May 1, 2023.

## DISCUSSION

1. *Damages for Slander of Title*

Miller and Arcuelo (hereafter, appellants) contend the trial court erred in denying their request to present evidence of damages. Specifically, they assert they are entitled to recover attorney fees as pecuniary damages for slander of title. They assert the complaint alleged sufficient facts to state a cause of action for slander of title, and to the extent it

12

did not, they contend the court erred in denying their request to conform the complaint to proof.

The Cabreras counter that the appeal of this issue is untimely and should be deemed waived because appellants did not allege slander of title in the complaint, did not present evidence of slander of title or damages in the initial trial, and did not address the issue in the initial appeal. The Cabreras further contend that this court's opinion in *Cabrera I.* limited the remand proceeding to addressing only the scope of the easement.

For reasons we explain below, we find no error.

A. *The Appeal Was Timely Filed*

We understand the Cabreras' timeliness argument to be more of a forfeiture argument, but we will note that the appeal was timely filed. The timeliness of an appeal is governed by California Rules of Court, rule 8.104,[4] which states that unless a statute or court rule provides otherwise, a notice of appeal must be filed on or before the earliest of 60 days after the notice of entry of judgment or a filed-endorsed copy of the judgment is served by the superior court clerk or a party, or 180 days after the entry of judgment. (Rule 8.104(a)(1).) Appellants filed their notice of appeal 33 days after the court filed the judgment, which is well within the timeline set by rule 8.104(a)(1).

B. *The Trial Court Properly Applied This Court's Remand Directions*

The general rules that govern proceedings on remand are well established. "When there has been a decision upon appeal, the trial court is reinvested with jurisdiction of the

---

[4] All further undesignated rule references are to the California Rules of Court.

13

cause, but only such jurisdiction as is defined by the terms of the remittitur. The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void." (*Hampton v. Superior Court of Los Angeles County* (1952) 38 Cal.2d 652, 655.) With an unqualified reversal, the parties are permitted to file amended pleadings before the retrial. (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1499-1500.) However, "[w]hen an appellate court's reversal is accompanied by directions requiring specific proceedings on remand, those directions are binding on the trial court and *must* be followed." (*Butler v. Superior Court* (2002) 104 Cal.App.4th 979, 982.) Unless directed to do so, the trial court cannot reopen the facts of the case, allow the filing of amended or supplemental pleadings, or retry the case; if it were to do so, the judgment rendered would be void. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701.) "The issues the trial court may address in the remand proceedings are therefore limited to those specified in the reviewing court's directions, and if the reviewing court does not direct the trial court to take a particular action or make a particular determination, the trial court is not authorized to do so." (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859-860.) In circumstances where the directions of the reviewing court are imperfect or impractical of execution, the aggrieved party's remedy is to file a petition for rehearing in the reviewing court. (*Kenney v. Kenney* (1954) 128 Cal.App.2d 128, 133, overruled on other grounds in *See v. See* (1966) 64 Cal.2d 778, 785.)

We review de novo the issue of whether the trial court properly followed the directions contained in the dispositional language of our previous opinion. "We look to the wording of our directions, read in conjunction with the opinion as a whole." (*Ruegg & Ellsworth v. City of Berkeley* (2023) 89 Cal.App.5th 258, 264.)

The reversal we issued in *Cabrera I.* was accompanied by directions that limited the trial on remand to "one question: Whether the Cabreras can maintain gates across Courtney in a way that will minimize the interference with their use of their own property, yet will not violate the plaintiffs' right to a prescriptive easement." (*Cabrera I.*, *supra*, E075257.) The disposition of our opinion directed the trial court to hold a trial on that question and to "enter judgment awarding the plaintiffs a prescriptive easement over Courtney, the scope of which must be in accordance with its finding on this question." (*Ibid.*)

Given the clear language in our opinion limiting further trial proceedings to the sole issue of whether gates could be maintained across Courtney Lane, the trial court properly concluded that allowing appellants to amend the complaint or present evidence of damages on a slander of title claim would have exceeded the scope of our remand instructions.

C. *The Complaint Did Not Allege Sufficient Facts to State a Cause of Action for Slander of Title*

We also reject appellants' claim that the complaint alleged sufficient facts to state a cause of action for slander of title.

The complaint alleged appellants have an interest in the property at issue "by way of adverse possession/prescriptive easement(s)"; that "[t]he existence of the [Courtney Lane] prescriptive easement can be documented for more [than] 20 years" through Google Maps; that Cabrera "fenc[ed] off both the entry and exit of the prescriptive easement" and "pushed a large amount of cubic yards of dirt and other material over the prescriptive easement and at the connection area of Courtney Lane Road and Arculeo Road … making any use of the prescriptive easement impossible"; that Cabrera narrowed "[t]he second prescriptive easement [which] is upon and over the 100 year existing easement" commonly known as Estelle Mountain Road by planting trees, and although "[o]bjection was made … during planting of the trees in the roadway … [the Cabreras] have refused to remove the trees"; and that [appellants] prayed for "an award of [a]ttorneys [f]ees and [c]osts" and for "such other and further relief as this court may deem just and proper."**5**

California has adopted the restatement definition of slander of title. (*Howard v. Schaniel* (1980) 113 Cal.App.3d 256, 263-264 (*Howard*).) Stated plainly, "[s]lander or disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes the owner thereof '"some special pecuniary loss or damage."'" (*Sumner Hill*, *supra*, 205 Cal.App.4th at p. 1030; *Fearon v. Fodera* (1915) 169 Cal. 370, 379-380.) The publication at issue can be oral,

---

**5** Appellants also assert the complaint alleged they '"incur[ed] legal expenses necessary to remove the doubt cast by the [Cabreras'] act and to clear title."' However, they do not include a citation for that allegation, and we were unable to find it in the complaint.

written, or based on conduct. (Rest.2d Torts, § 630, com. (b).) A publication that is reasonably understood to cast doubt upon the existence or extent of another's interest in land is considered disparaging to the latter's title. (*Sumner Hill*, at p. 1030; *Hill v. Allan* (1968) 259 Cal.App.2d 470, 489 (*Allan*).) Attorney fees are recoverable as pecuniary loss in a slander of title claim when litigation "is necessary 'to remove the doubt cast' upon the vendibility or value of a plaintiff's property." (*Sumner Hill*, at p. 1030.)

The holder of an easement does not have title to the underlying property. They have the right to use the property in a specific manner. (*Blackmore v. Powell* (2007) 150 Cal.App.4th 1593, 1601.) Notwithstanding this distinction, vested easement rights can provide the requisite "'title'" or property rights needed to support a slander of title claim. (*Sumner Hill*, *supra*, 205 Cal.App.4th at p. 1029.) However, a plaintiff cannot establish their right to the property and recover on a slander of title claim in the same proceeding. (*Howard*, *supra*, 113 Cal.App.3d. at pp. 264-265.) When the property rights at issue are based on adverse possession or a prescriptive easement, the plaintiff must have established their property rights through a prior judicial proceeding before they can state a cause of action for slander of title. (*Sumner Hill*, at pp. 1028-1029, citing *Howard*, at pp. 264-265 [adverse possession], *Allan*, *supra*, 259 Cal.App.2d at pp. 490-491 [prescriptive easement].) This rule is based on the presumption that the person holding record legal title to property is the owner of the property, and until the adverse possessor has obtained a judicial record establishing their right to the property, they do not have the title needed to establish a slander of title claim. (*Howard*, at pp. 264-265.)

17

Appellants brought the current quiet title action to establish their right to a prescriptive easement over Courtney Lane and Estelle Mountain Road. Because they had not previously established their right to the prescriptive easements, they did not have the "title" or property rights needed to state a cause of action for slander of title. We therefore reject the claim that the complaint pleaded sufficient facts to state a cause of action for slander of title.[6]

2. *Finding of Malice or Oppression*

Appellants next contend the court erred by failing to make a finding that the Cabreras acted with malice or oppression in blocking and interfering with their access to the easements. We find no prejudicial error. Even if we were to agree with appellants that the trial court erred by not making a finding on the issue of malice or oppression as requested, appellants have not met their burden of showing they were prejudiced by the error.

---

[6] At oral argument, appellants' counsel disagreed with our summary of the law and argued the rule that a plaintiff must have established their property rights through a prior judicial proceeding before they can state a cause of action for slander of title only applies to property rights acquired through adverse possession, not a prescriptive easement. Our reading of *Sumner Hill*, *supra*, 205 Cal.App.4th at pages 1028-1029, *Allan*, *supra*, 259 Cal.App.2d at pages 490-491, and *Howard*, *supra*, 113 Cal.App.3d at pages 264-266, compels us to disagree. We see no reason in this context to distinguish between property rights acquired through adverse possession and property rights acquired through a prescriptive easement. Both situations involve a party, who is not the record owner of land, asserting the right to own or use the land of another. Until that party has established their right to the property through a judicial proceeding, they do not have the requisite "title" or property rights needed to state a cause of action for slander of title. A claim of right to the property is not enough. (*Howard*, at p. 266.)

18

"To prevail on appeal, an appellant must establish both error and prejudice from that error." (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894.) Prejudicial error related to a matter of procedure requires a showing that the claimed error has resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.) "Under this standard, the appellant bears the burden to show it is reasonably probable he or she would have received a more favorable result at trial had the error not occurred." (*Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 308.) We will not presume prejudice. (Code Civ. Proc., § 475.) If an appellant fails to meet their burden of showing an error is prejudicial, reversal is not required. (*Citizens for Open Government v. City of Lodi*, *supra*, at p. 308.)

In the remand proceeding, appellants initially sought an award of punitive damages, but then changed their position and requested that rather than awarding punitive damages, the trial court make a finding that the Cabreras acted with malice or oppression in blocking Courtney Lane. Appellants' counsel explained below that the purpose for the requested finding was to prevent an award of damages from being discharged in a bankruptcy proceeding. However, the court ultimately did not award any damages, and appellants do not explain how the court's failure to make the requested finding impacted them in any appreciable way.

It is not sufficient to simply point to an error and rest there. The appellant must explain how the error caused a miscarriage of justice. (*In re Marriage of McLaughlin*

(2000) 82 Cal.App.4th 327, 337.) By failing to explain how the error was prejudicial, appellants have not met their burden of demonstrating reversible error.

3. *Motion to Tax Costs*

Finally, appellants contend the trial court erred in partially granting the Cabreras' motion to tax costs. Appellants challenge the striking of their appellate costs and two filing fees—one for a motion to compel filed in the trial court, and one for a petition for writ of mandate filed in this court. We agree the court erred in striking the appellate costs but disagree as to the filing fees.

Statutory authority for awarding costs after litigation is found in Code of Civil Procedure[7] sections 1032 through 1038. (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 259 (*Alan S.*).)

Section 1032 provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).) Section 1033.5 lists specific expenses that are "allowable" and "not allowable" as costs under section 1032. (§ 1033.5, subd. (a), (b).) Filing fees are allowable costs. (§ 1033.5, subd. (a)(1).) Section 1033.5 further provides that allowable costs must be both "reasonable in amount" and "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." (§ 1033.5, subd. (c)(2), (3).)

---

[7] All further undesignated statutory references are to the Code of Civil Procedure.

Sections 1032 and 1033.5 are directed toward the trial court and do not govern costs on appeal.  (*Alan S.*, *supra*, 172 Cal.App.4th at p. 259; *Stratton v. Beck* (2018) 30 Cal.App.5th 901, 910.)  "[C]osts on appeal and the procedure for claiming those costs" are governed by the California Rules of Court.  (§ 1034, subd. (b).)  Rule 8.278 is the rule that governs costs on appeal.  "As section 1033.5 does for trial-related costs, rule 8.278 enumerates '[r]ecoverable costs,' which it expressly provides are the only costs that may be recovered on appeal."  (*Stratton v. Beck*, *supra*, at p. 910.)  Under rule 8.278, and the corollary rule 8.493 which governs costs in appellate writ proceedings, the prevailing party in a civil appeal or a writ proceeding that was resolved by written opinion is entitled to recover their costs.  (Rules 8.278(a)(1), 8.493(a)(1)(A).)  Filing fees and the cost for preparing the record are both recoverable costs.  (Rules 8.278(d)(1)(A) & (B), 8.493(b).)

The procedure for recovering costs after litigation—whether trial or appellate costs—is set forth in rule 3.1700.  (*Alan S.*, *supra*, 172 Cal.App.4th at p. 259; *Neeble-Diamond v. Hotel California By the Sea, LLC* (2024) 99 Cal.App.5th 551, 556 (*Neeble-Diamond*).)  The prevailing party must serve and file a verified memorandum of costs in the superior court.  (Rules 3.1700(a)(1), 8.278(c)(1).)  The timeline for filing the memorandum of costs differs depending on whether the costs are sought under section 1032 (trial costs) or rule 8.278 (appellate costs).  For costs under section 1032, the memorandum must be filed "within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under [section 664.5] or the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of

21

judgment, whichever is first." (Rule 3.1700(a)(1).) For costs under rule 8.278, the memorandum must be filed "[w]ithin 40 days after issuance of the remittitur." (Rule 8.278(c)(1).) In both circumstances, the nonprevailing party may then serve and file a motion to strike or tax costs within 15 days after service of the cost memorandum. (Rules 3.1700(b)(1), 8.278(c)(2).) If a timely motion to tax costs is not filed, the clerk has a ministerial duty to enter the costs as a money judgment. (*Neeble-Diamond*, *supra*, at p. 556; *Alan S.*, *supra*, 172 Cal.app.4th at p. 262.) Rule 3.1700(b)(4) requires the clerk to "immediately enter the costs on the judgment" after the time for the motion to strike or tax costs or for determination of the motion has passed. "There is not a lot of forgiveness for missing the deadline there." (*Alan S.*, at p. 260.)

In assessing a timely filed motion to tax costs, "the trial court's first determination is whether the statute expressly allows the particular item and whether it appears proper on its face. 'If so, the burden is on the objecting party to show [the costs] to be unnecessary or unreasonable.' [Citation.] Where costs are not expressly allowed by the statute, the burden is on the party claiming the costs to show that the charges were reasonable and necessary. [Citation.] 'Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for abuse of discretion.'" (*Foothill-De Anza Community College Dist. v. Emerich* (2007) 158 Cal.App.4th 11, 29-30.)

22

A. *Appellate Costs*

   i.   *Background*

Our opinion in *Cabrera I.* awarded appellants their costs on appeal.  (*Cabrera I.*, *supra*, E075257.)  On January 12, 2022, two days after the remittitur issued, appellants filed a memorandum of costs (the Jan. 12 memo.) claiming they were entitled to $3,281.50 in appellate costs, based on $775 in filing fees, $106.50 for preparation of the clerk's transcript or appendix, and $2,400 for preparation of the reporter's transcript.  The Cabreras did not file a motion to tax these costs.

After the trial on remand, appellants filed another memorandum of costs, followed by the Sept. 8 amended memo.  Among the costs claimed in the Sept. 8 amended memo., appellants again claimed the $3,281.50 in appellate costs.  They listed these costs in the "other" category on the form they submitted, and stated the costs were "Appellate Costs per [m]emorandum."

On September 12, 2022, the Cabreras timely filed a motion to tax the costs claimed in the Sept. 8 amended memo.  In their motion, the Cabreras argued the appellate costs were not sufficiently detailed as required under section 1033.5.  Appellants filed an opposition that addressed other challenged costs but did not address the appellate costs.  At the hearing on the motion, appellants explained that the appellate costs they claimed were the costs incurred in the initial appeal, as set forth in their Jan. 12 memo.  The court stated it believed the Jan. 12 memo. was filed prematurely.  The Cabreras agreed, and

23

argued it was not appropriate to address costs until there had been a tentative or final judgment in the matter.

The court's written ruling struck the "other" costs because appellants did not sufficiently explain what the costs were for and did not meet their burden of showing the costs were reasonably necessary to the litigation.

ii. *Discussion*

Appellants contend the court erred in striking the appellate costs because the costs became a final order of the court when the Cabreras failed to file a motion to tax costs after the Jan. 12 memo. We agree.

As noted, costs on appeal are governed by rule 8.278. (§ 1034, subd. (b); *Alan S.*, *supra*, 172 Cal.App.4th at pp. 259-260.) Appellants complied with this rule by timely filing their Jan.12 memo. two days after the remittitur issued in *Cabrera I.* (Rule 8.278(c)(1) [memorandum of costs must be filed "[w]ithin 40 days after issuance of the remittitur"].)

The trial court erroneously concluded that the Jan. 12 memo. was prematurely filed because the court had not yet entered judgment in the proceedings on remand. However, as we explained in *Krikorian Premiere Theatres, LLC v. Westminster Central, LLC* (2011) 193 Cal.App.4th 1075, 1083, the relevant judgment in an award of appellate costs is the judgment of the appellate court, not the superior court. The right to recover appellate costs """comes into being when the order of the reviewing court becomes final""" and is not affected by any further proceedings in the trial court. (*Ibid.*)

Accordingly, the Cabreras were under an obligation to file a motion to strike or tax the appellate costs within 15 days after being served with the Jan. 12 memo., which they did not do. (Rules 3.1700(b)(1), 8.278(c)(2).) This resulted in the appellate costs becoming a judgment which the clerk had a ministerial duty to enter. (Rule 3.1700(b)(4); *Alan S.*, *supra*, 172 Cal.App.4th at p. 262.)

We therefore agree with appellants that the trial court improperly taxed the appellate costs.

B. *Filing Fee for the Motion to Compel*

Appellants also challenge the striking of a $60 filing fee for a motion to compel filed in the trial court.

i. *Background*

Appellants filed the motion to compel on March 14, 2018, as the parties were approaching the initial trial. At that time, trial was two months away (scheduled for May 18) and the Cabreras had a motion to continue trial pending.

Through their motion to compel, appellants sought an order to compel the Cabreras to exchange documents and hold the pretrial issues conference required under Riverside County Superior Court Local Rule 3401. That rule requires the parties to exchange documents "not later than 14 days before the date set for trial" and to hold the issues conference "[n]ot less than seven days before the date set for trial." (Super. Ct. Riverside County, Local Rules, rule 3401(2), (3).)

On March 22, 2018, the court held a hearing on the Cabreras' motion to continue and granted the motion. The court continued trial to August 10, and at appellants' request, vacated the hearing on their motion to compel.

Appellants claimed the filing fee for the motion to compel in their Sept. 8 amended memo., and the Cabreras' timely challenged it in their September 12, 2022, motion to tax costs. The Cabreras initially argued no motion to compel was filed, then later argued the filing fee should be stricken because the hearing on the motion was vacated and appellants did not prevail on the motion.

The court reviewed the register of actions and struck the filing fee because the motion to compel was taken off calendar at appellants' request.

ii. *Discussion*

Appellants contend the court erred in taxing the filing fee because the motion to compel was reasonably necessary to the litigation as the parties had an imminent trial date and the Cabreras had not yet complied with Local Rule 3401 of the Riverside Superior Court. Appellants also assert there is no requirement that the party prevail on the specific motion at issue, provided they are the prevailing party in the broader litigation.

Appellants are correct that section 1033.5 does not include a requirement that the party claiming the cost of a filing fee need to have prevailed on the motion filed. It does, however, require an allowable cost, such as a filing fee, to be "reasonably necessary to the conduct of the litigation" (§ 1033.5, subd. (c)(2); see *id*. (a)(1)) and the trial court has

26

discretion under section 1033.5 "to disallow recovery of costs, including filing fees, when it determines the costs were incurred unnecessarily" (*Perko's Enterprises, Inc. v. RRNS Enterprises* (1992) 4 Cal.App.4th 238, 245). The trial court's determination that a cost was incurred unnecessarily will not be disturbed on appeal absent a """"clear abuse of discretion" and a "miscarriage of justice.""" (*Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49, 52.)

We see no such abuse of discretion here. Appellants filed their motion to compel eight days before the hearing on the Cabreras' motion to continue trial, at a time when the Cabreras still had over a month in which to comply with Local Rule 3401 of the Riverside Superior Court. Appellants then withdrew the motion when the court continued the trial, and no hearing was ever held on the motion. Appellants have not shown the trial court abused its discretion in concluding the filing fee was incurred unnecessarily.

C. *Filing Fee for the Petition for Writ of Mandate*

Finally, appellants challenge the striking of the $808.75 filing fee for a petition for writ of mandate they filed in this court.

### i. *Background*

Appellants filed the petition for writ of mandate on May 27, 2022, to challenge the trial court's denial of their request for a jury trial on remand. We summarily denied the petition and did not award costs.[8]

Appellants claimed the filing fee for the petition in their Sept. 8 amended memo., and the Cabreras timely challenged it in their September 12, 2022 motion to tax costs. The Cabreras argued appellants were not entitled to recover the filing fee because they did not prevail on the petition. The trial court agreed and struck the cost because it was not reasonably necessary to the litigation.

### ii. *Discussion*

Appellants contend the court erred in striking the filing fee because the petition was reasonably necessary to challenge the denial of their right to a jury trial. They assert there is no requirement that the party prevail "on the individual motion or writ" at issue provided they are the prevailing party "on the entire action."

Appellants too broadly construe the concept of a prevailing party. As the prevailing party in the underlying proceeding, appellants were entitled to the costs they incurred in the trial court, but the writ petition they filed in this court was not part of that proceeding; it was part of an original proceeding initiated in this court in which appellants were not the prevailing party. (See *Tabarrejo v. Superior Court* (2014) 232

---

[8] On our own motion, we take judicial notice of the denial order we issued on June 20, 2023 (*Jerry Miller et al., v. Superior Court; Jose Cabrera et al.,* E079067), which provides in its entirety, "The petition for writ of mandate and request for immediate stay are DENIED." (Evid. Code, §§ 452, subd. (d)(1), 459.)

Cal.App.4th 849, 859 [filing of writ petition initiates an original proceeding].) As with an appeal, the determination of whether to award costs in an appellate writ proceeding is made by the appellate court. (§ 1034, subd. (b); rules 8.278, 8.493.) Rule 8.493 provides: "Unless otherwise ordered by the court under (B), the prevailing party in an original proceeding is entitled to costs if the court resolves the proceeding by written opinion after issuing an alternative writ, an order to show cause, or a peremptory writ in the first instance." (Rule 8.493(a)(1)(A).) "In the interests of justice, the court may also award or deny costs as it deems proper in the proceedings listed in (A) and in other circumstances." (Rule 8.493(a)(1)(B).)

Appellants were not the prevailing party in the writ proceeding they filed in our court, nor did we deem it proper to award costs in the interests of justice. (Rule 8.493(a)(1)(A), (B).) Appellants were therefore not entitled to recover the filing fee for the writ petition. Their status as the prevailing party in the trial court did not entitle them to recover costs incurred in this court. Accordingly, we find no error in the court having taxed this cost.

4. *The Appeal was not Frivolous*

Finally, we reject the Cabreras' request that we sanction appellants for bringing a frivolous appeal.

Sanctions may be imposed when an appeal is frivolous or taken solely to cause delay. (§ 907; rule 8.276(a)(1).) An appeal is frivolous "when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—

or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)

There is no evidence that appellants brought the appeal for an improper motive such as harassment or delay. Nor can it be said that the appeal indisputably had no merit as we agreed with appellants that the trial court erroneously taxed the appellate costs we awarded in *Cabrera I.*, *supra*, E075257. We therefore decline to impose sanctions against appellants for filing a frivolous appeal.

## DISPOSITION

The trial court's ruling on the Cabreras' motion to tax costs is partially reversed. The trial court is directed to amend the judgment to award appellants $3281.50 in costs from the initial appeal. In all other respects, the judgment is affirmed. Each party to bear their own costs for this appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ＿＿＿＿＿＿＿
P. J.


We concur:

MILLER＿＿＿＿＿＿＿
J.
CODRINGTON＿＿＿＿＿
J.

30